IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01249-RM-STV

JAMES ARTHUR FAIRCLOTH,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
DEAN WILLIAMS,
RICK RAEMISCH,
SUSAN TIONA,
RENAE JORDAN,
RISHI ARIOLA-TIRELLA,

    Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendants' Motion to Dismiss In Part the Fifth Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") [#204], which has been referred to this Court [#205]. The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **DENIED**.

## I. BACKGROUND[1]

Plaintiff James Faircloth is an inmate in the custody of the Colorado Department of Corrections ("CDOC"). [#188 at ¶ 7] Defendants include the CDOC and current and former employees of the CDOC. [*Id.* at ¶¶ 8-13] Defendant Dean Williams is the CDOC acting Director. [*Id.* at ¶ 8] Defendant Rick Raemisch was formerly the CDOC Director and was responsible for administration of prisoner medical care. [*Id.* at ¶ 9] Defendant Rishi Ariola-Tirella was formerly CDOC's Interim Chief Medical Officer and was responsible for prisoner medical care. [*Id.* at ¶ 10] Defendant Susan Tiona was CDOC's Chief Medical Officer. [*Id.* at ¶ 11] Defendant Renae Jordan is CDOC's Director of Clinical and Correctional Services and is responsible for overseeing the administration of prisoner medical care. [*Id.* at ¶ 12]

Plaintiff suffered from chronic Hepatitis C Virus ("HCV") from 1996 until 2018. [*Id.* at ¶ 7] HCV is a blood-borne viral infection of the liver. [*Id.* at ¶ 14] Without exception, chronic HCV causes liver damage. [*Id.* at ¶¶ 16] "Left untreated, it increases a person's risk of developing heart disease, diabetes, B cell lymphoma and other cancers, Parkinson's disease, and kidney disease. Likewise, chronic HCV often causes other extrahepatic manifestations such as chronic fatigue, severe depression, and arthritis." [*Id.* at ¶ 20] Early HCV treatment had a low effectiveness rate and serious side effects, causing it to only be recommended for patients with significant HCV progression. [*Id.* at ¶¶ 22-23] But in 2013 and 2014, the FDA approved new direct-acting antiviral medications ("DAAs") to treat HCV. [*Id.* at ¶ 24] The new DAAs reduced

---

[1] The facts are drawn from the allegations in Plaintiff's Fifth Amended Complaint [#188], which must be taken as true when considering the Motion. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

2

treatment length and adverse side effects, as well as decreasing risk of liver cancer, liver failure, and death. [*Id.* at ¶ 25, 27] DAAs cure over 95% of cases, but cannot reverse damage already done by the disease. [*Id.*] "For that reason, a delay in receiving treatment for HCV could be devastating to a patient's future health outcomes." [*Id.* at ¶ 27] According to guidelines published by the American Association for the Study of Liver Diseases and the Infectious Diseases Society of America ("AASLD/IDSA"), DAAs are now "recommended for all patients with chronic HCV infection," with narrow exceptions. [*Id.* at ¶ 28] The guidelines urge treatment with DAAs at the very early stages of the disease. [*Id.* at ¶ 29]

CDOC promulgates Clinical Standards and Procedures for Hepatitis C ("Clinical Standards"). [*Id.* at ¶ 39] From April 2013 to November 2015 the Clinical Standards approved treatment for inmates with chronic HCV only after (1) diagnosis of stage 3 liver fibrosis, (2) meeting age requirements, and (3) "completion of drug and alcohol treatment, no evidence of ongoing high-risk behavior, and adequate time prior to MRD to complete evaluation of all treatment prior to discharge." [*Id.* at ¶¶ 40, 44; #188-1 at 5] High-risk behaviors were listed as: "substance abuse; disciplinary actions related to illicit, illegal, or any prescription drug abuse or alcohol use since starting drug and alcohol treatment; disciplinary action for tattooing (tattooing paraphernalia); drug or alcohol related contraband; misuse of medications; or sexual activity involving another offender or staff member." [#188 at ¶ 41] An inmate identified as having engaged in such behavior would be barred from eligibility for HCV treatment for one year. [*Id.* at ¶ 42] None of the listed "high-risk" behaviors would disqualify a patient with chronic HCV from receiving treatment outside the corrections setting. [*Id.* at ¶ 43]

3

The Clinical Standards from November 2015 to August 2017, signed by Defendants Tiona and Jordan, instituted the use of DAA treatment and the APRI liver fibrosis test. [*Id.* at ¶¶ 46, 50-51] Under these standards, "an inmate must score a 0.7 or above on the APRI, complete alcohol and drug treatment, and demonstrate an absence of 'high-risk behavior' in order to be eligible for HCV treatment." [*Id.* at ¶ 47; *see also* #188-2 at 5] Once those requirements were met, an inmate only received treatment if approved by the Infectious Disease Committee ("IDC"). [*Id.* at ¶ 49] The Clinical Standards were again updated in August 2017 and signed by Defendants Jordan and Ariola-Tirella.[2] [*Id.* at ¶¶ 53, 56] Under this version, treatment qualification required: "an APRI score > 0.7 as demonstrated by lab results obtained within the previous ninety (90) days," participation in a meeting with an Alcohol and Drug Treatment Program clinician, and approval by the IDC. [*Id.* at ¶¶ 53-54]

Plaintiff was diagnosed with HCV in 1996 and has been continuously in CDOC care or custody since June 2009. [*Id.* at ¶¶ 57-58] From June 2009 to July 2018 Plaintiff was not provided HCV treatment. [*Id.* at ¶¶ 59-60] By November 2013, he was experiencing symptoms including fatigue and mood swings due to hepatic encephalopathy. [*Id.* at ¶ 61] Between November 2013 and May 2014, Plaintiff requested and was denied HCV treatment based on the Clinical Standards' requirement that he complete drug and alcohol treatment. [*Id.* at ¶¶ 60, 62] Plaintiff had not consumed illicit substances while at CDOC and, while he had attempted to enroll in the program, he was repeatedly denied admission. [*Id.* at ¶¶ 62-63] As early as April 2014, Plaintiff began writing letters to Defendant Raemisch regarding the denial of HCV

---

[2] This version was operative through July 2018. [#188 at 13]

4

treatment and notifying Mr. Raemisch that the requirements violated his constitutional rights and the AASLD/IDSA guidelines.  [*Id.* at ¶ 64]

Over the course of 2014, Plaintiff requested treatment from three other CDOC medical providers, all of whom recognized his serious medical need and the irreversible consequences of delayed treatment, but who nevertheless refused treatment due to requirements in the Clinical Standards.  [*Id.* at ¶¶ 65-68]  Between April 2015 and October 2017, Plaintiff continued to request HCV treatment from at least four CDOC medical providers, all of whom recognized his condition but refused treatment under the Clinical Standards.  [*Id.* at ¶¶ 69-71]  In October 2017, Plaintiff was approved for DAA treatment and for transfer to Community Corrections; however, he was told he had to choose between release or treatment because the CDOC would not authorize treatment for him at Community Corrections.  [*Id.* at ¶¶ 72-73]  Plaintiff felt he was forced to choose between his life and his liberty.  [*Id.* at ¶ 76]  Plaintiff was released to Community Corrections in October 2017, where he attempted to receive treatment by other means.  [*Id.* at ¶ 77]  He regressed back to CDOC in February 2018, before he could obtain treatment.  [*Id.*]

Plaintiff finally received HCV treatment in the form of Zepatier—a DAA medication—on July 11, 2018, nearly a decade after he first entered the CDOC.  [*Id.* at ¶ 78]  Despite treatment, his symptoms have persisted and Defendants have refused to evaluate the extent of his liver damage and the success of treatment.  [*Id.* at ¶ 79] Plaintiff does not know if he still has HCV.  [*Id.* at ¶ 80]  As a result of the lack of treatment, Plaintiff has suffered from: (1) irreversible damage to his hepatic system, causing liver cirrhosis [*id.* at ¶ 82]; (2) "severe pain, night sweats, diarrhea, depression,

5

and paralyzing anxiety" [*id.* at ¶ 83]; (3) "hepatic encephalopathy in the form of dizziness, severe fatigue, mental confusion, amnesia, and personality changes," [*id.* at ¶ 84]; and (4) shortened life expectancy [*id.* at ¶¶ 85-86].

Plaintiff initiated the instant action on May 22, 2018 [#1] and filed the Fifth Amended Complaint ("the Complaint") on February 14, 2020 [#188]. The Complaint contains three claims for relief. The First Claim is for injunctive relief against Defendant Williams for violation of 42 U.S.C. § 1983 under the Eighth and Fourteenth Amendments to the United States Constitution. [*Id.* at ¶¶ 87-94] The Second Claim is for damages against Defendants Raemisch, Rishi-Tirella, Jordan, and Tiona for violation of 42 U.S.C. § 1983 under the Eighth and Fourteenth Amendments. [*Id.* at ¶¶ 95-100] The Third Claim is against Defendant CDOC for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq.* [*Id.* at ¶¶ 101-109]

On April 21, 2020, Defendants filed the instant Motion, arguing that Plaintiff's First and Second Claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). [*See generally* #204] Plaintiff has responded [#217], and Defendants have replied [#221].

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a

6

plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III. ANALYSIS

The Motion contends that (1) the Complaint fails to sufficiently plead a section 1983 claim under the Eighth and Fourteenth Amendments; (2) Defendants Raemisch, Tiona, Jordan, and Ariola-Tirella are entitled to qualified immunity; and (3) certain claims are barred by the statute of limitations. [*See generally* #204] The Court addresses each argument in turn.

### A. Sufficiency of 1983 Claims

Defendants argue that the Complaint fails to plausibly allege under Section 1983 that Defendants violated the Eighth and Fourteenth Amendments. [#204 at 5-15] A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment, as made applicable to the states by the Fourteenth Amendment.[3] *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference" involves both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Defendants argue the Complaint fails to establish: (1) the objective component; (2) the subjective component; and (3) supervisory liability as required by section 1983.

#### 1. Objective Component

The objective component is met if the deprivation of medical care is "sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). "[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. [The Tenth Circuit has] held that the substantial harm requirement

---

[3] In the Motion, Defendants argue separately that Plaintiff fails to differentiate between the causes of action under the Eighth and Fourteenth Amendments, which arise from the same set of facts alleging that Defendants delayed providing medical treatment to Plaintiff. [#204 at 14] Defendants thus argue that the Court should dismiss the Fourteenth Amendment claims for that reason. [*Id.*] As Plaintiff's Response does not refute that the claims rest solely on the Eighth Amendment and the Court can identify no particular allegations under the Fourteenth Amendment on its own, the Court finds that Plaintiff cites the Fourteenth Amendment for its role in applying the Eighth Amendment to the states.

may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citation and internal quotations omitted).

In the instant Motion, Defendants argue that chronic HCV is not a "sufficiently serious" medical need and that due to the slow-progressing nature of the disease, delay in treatment, without more, does not constitute substantial harm. [#204 at 4, 9-10]; s*ee also Vasquez v. Davis*, 226 F.Supp.3d 1189, 1207 (D. Colo. 2016) (finding at summary judgment stage that plaintiff had failed to satisfy his burden of demonstrating a sufficiently serious medical need where his doctor was unwilling to testify that plaintiff was not within the 75 percent of chronic HCV patients who suffer no serious complications), *rev'd in part on other grounds*, *Vasquez v. Davis*, 882 F.3d 1270 (10th Cir. 2018). But the Complaint does not merely allege a delay in treatment "without more." It alleges that from 2014 to 2017, a number of CDOC medical providers informed Plaintiff that his condition was serious and that lack of treatment would cause irreversible harm. [#188 at ¶¶ 67-71] It further alleges that the delay in treatment caused actual, irreversible physical damage, including liver cirrhosis[4] and other prolonged physical ailments, such as diarrhea, depression, hepatic encephalopathy,[5] paralyzing anxiety, and severe fatigue. [*Id.* at ¶¶ 82-85] At this early stage of litigation, these allegations, taken together, plausibly plead permanent loss and considerable pain

---

[4] Liver cirrhosis itself appears to be a sufficiently serious and permanent medical condition, as Plaintiff alleges that it is "characterized by distortion of the liver architecture and the formation of regenerative nodules that no longer allow the liver to function properly. Once the liver degrades to this degree, the damage is considered irreversible." [#188 at ¶ 19]

[5] "[C]irrhosis can also lead to hepatic encephalopathy, which is a decline in brain function that occurs as a result of severe liver disease. In this condition, the liver cannot adequately remove toxins from the blood. This causes a buildup of toxins in the bloodstream, which can lead to brain damage." [#188 at ¶ 19]

due to delayed treatment and in satisfaction of the objective component. *See Garrett*, 254 F.3d at 950.

### 2. Subjective Component

The subjective component of a deliberate indifference claim "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (quoting *Farmer*, 511 U.S. at 837). Mere negligence, however, is not sufficient. *Farmer*, 511 U.S. at 835. Rather, "[t]he subjective component is akin to 'recklessness in the criminal law,' where, to act recklessly, a 'person must "consciously disregard" a substantial risk of serious harm.'" *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837, 839). In the prison medical context, "deliberate indifference is present when prison officials intentionally deny or delay access to necessary medical treatment for non-medical reasons." *Hammond v. Crum*, No. 16-CV-0069-GPG, 2016 WL 153224, at *2 (D. Colo. Jan. 13, 2016) (citing *Estelle*, 429 U.S. at 104-05). Deliberate indifference also occurs when prison officials "erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Todaro v. Ward*, 565 F.2d 48, 53 (2d Cir. 1977)); *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011) (finding subjective component satisfied where defendant employed inflexible, categorical treatment protocols to prisoner HCV treatment); *Postawko v. Missouri Department of Corrections*, No. 2:16-cv-04219-NKL, 2017 WL 1968317, at *8 (W.D. Mo., May 11, 2017) (denying motion to dismiss and finding that a prison policy "which prolongs the suffering of those diagnosed with chronic HCV and

allows the progression of the disease to accelerate . . . is enough to show deliberate indifference, particularly at the current pleading stage").

Defendants argue that the Complaint merely alleges a disagreement between Plaintiff and medical professionals about appropriate treatment and that this cannot show Defendants acted with deliberate indifference. [#204 at 13 (*citing Roper v. Grayson*, 81 F.3d 124, 125-26 (10th Cir. 1996))]. But Plaintiff alleges more than a mere disagreement with his treatment; he alleges he was completely denied treatment for a period of years, despite a number of medical professionals stating that treatment was, in fact, necessary. [#188 at ¶¶ 25, 28-30, 67-71] The Complaint further alleges that the Clinical Standards' requirements, which mandated the denial of Plaintiff's treatment, are contrary to the prevailing medical standard and not medically justified.[6] [#188 ¶¶ 28-31; 59; 92]

These allegations, if true, plausibly allege that the Clinical Standards imposed by Defendants created categorical, nonmedical barriers to treatment for chronic HCV, which were applied to Plaintiff despite his actual condition. At this stage such allegations are sufficient to sustain an Eighth Amendment claim for deliberate indifference. *See Roe*, 631 F.3d at 862; *Hammond*, 2016 WL 153224, at *2.

---

[6] The Complaint alleges that the prevailing medical guidelines for HCV treatment are created by the AASLD and IDSA. [#188 at ¶¶ 28-30] The Court notes that the Clinical Standards reference these organizations as authority for HCV treatment. [*See e.g.*, #188-2 at 17] Drawing all reasonable inferences in the light most favorable to Plaintiff, as it must, *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011), the Court additionally finds that Plaintiff plausibly alleges that Defendants, who were responsible for approving the medical treatment plan, knew of the prevailing guidelines for HCV treatment.

### 3. **Supervisory Liability**[7]

In order to maintain a constitutional claim under section 1983, a Plaintiff must establish either personal or supervisory liability of the Defendants. *Brown v. Montoya*, 662 F. 3d 1152, 1163 (10th Cir. 2011). A claim based on supervisory liability requires: "(1) personal involvement[,] (2) causation, and (3) [culpable] state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)). To establish causation, a plaintiff must show that a supervisor defendant "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Dodds*, 614 F.3d at 1211 (Tymkovich, J., concurring) (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)). As to the third element, a plaintiff can establish the required state of mind by showing that the supervisor acted with deliberate indifference. *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018).

Defendants Jordan, Tiona, and Ariola-Tirella argue that the Complaint fails to establish causation because it does not plead any facts showing they created or implemented the Clinical Standards. [#204 at 12-13]. But "[t]he exercise of control which may create the 'affirmative link' [necessary to establish supervisory liability] does not need to be the sort of on-the-ground, moment-to-moment control that defendants appear to suggest." *Davis v. City of Aurora*, 705 F.Supp.2d 1243, 1263 (D. Colo. 2010).

---

[7] In the Motion, Defendants additionally argue that the Complaint alleges no facts specific to Defendant Williams and that claims against him should therefore be dismissed for failure to allege supervisory or personal liability under section 1983 and failure to allege the subjective component of an Eighth Amendment claim. [#204 at 11-12] However, in their Reply, Defendants withdraw this argument and the Court will therefore not consider it. [#221 at 6 n. 1]

12

"Rather, the establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's 'affirmative link' to the constitutional violation." *Id.* Here, the Complaint alleges that each of these three Defendants were responsible for the administration of prisoner medical care and that in those roles they signed the Clinical Standards. [#188 at ¶¶ 10-12, 51, 56] The Complaint further alleges that the Clinical Standards represent the CDOC's HCV treatment policy and that Plaintiff was repeatedly denied HCV treatment because of, specifically, that policy. [*Id.* at ¶¶ 39, 60-71] At this early stage of litigation, these allegations are sufficient to plausibly allege that the defendants "promulgated, created, implemented or possessed responsibility for the continued operation of" the Clinical Standards, which directly caused Plaintiff to be denied treatment. *Dodds*, 614 F.3d at 1199.

The Court also finds the Complaint plausibly alleges supervisory liability against Defendant Raemisch. In the Motion, Defendants contend that sending letters to Defendant Raemisch is analogous to filing a grievance with prison authorities and that "a denial of a grievance, by itself . . . does not establish personal participation under § 1983." [#204 at 14 (*quoting Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009))]. But allegations that a supervisory prison official was aware of a constitutional violation and failed to take action are sufficient to survive a motion to dismiss in this District. *See Green v. Branson*, 108 F.3d 1296, 1302-03 (10th Cir. 1997) (finding summary judgment in favor of warden inappropriate where warden was aware of the severity of prisoner's condition and lack of medical treatment but failed to take action); *Kneen v. Zavaras*, 885 F. Supp.2d 1055, 1061 (D. Colo. 2012) (finding that prisoner's claims for denial of HCV treatment survived motion to dismiss because prison health

administrator reviewed prisoner complaints and was therefore aware of lack of medical care yet took no corrective action).

Here, the Complaint alleges Defendant Raemisch, as CDOC Director, was responsible for administration of prisoner medical care and that Plaintiff repeatedly notified Defendant Raemisch, through letters and grievances, of the denial of treatment in violation of the Eighth Amendment and AASLD/IDSA guidelines. [#188 at ¶¶ 9, 64] If true, these allegations plausibly allege that Defendant Raemisch was aware of a constitutional violation and allowed it to continue, thus providing the affirmative link necessary to establish supervisory liability. *Kneen*, 885 F. Supp. at 1061.

In summary, at this early stage of the proceedings and prior to discovery, the Court finds that Plaintiff has included enough facts to state Eighth Amendment claims against all Defendants which are plausible on their face. Accordingly, the Court RECOMMENDS the Motion be DENIED as to the sufficiency of the 1983 claims.

### B.     Qualified Immunity

The individual Defendants next argue they are entitled to qualified immunity. [#204 at 16-17] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defense of qualified immunity is asserted, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn*

*v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established . . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

As noted above, the Complaint plausibly pleads Eighth Amendment violations by all Defendants. Thus, the only remaining determination is whether a right to treatment was clearly established at the time of the alleged violations. The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 591 n.8 (2018). The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

Courts in this district have determined that, for the purpose of qualified immunity, prison officials are on notice that they "are at risk of violating the Eighth Amendment if they do not provide treatment in accordance with prison doctor recommendations." *Morris v. Berkebile*, No. 14-cv-01296-KLM, 2015 WL 5474469, *11 (D. Colo. Sept. 18, 2015) (citing *Hunt*, 199 F.3d at 1222-1224). This is true regarding the more particular denial of HCV treatment. *Id.*; *Green v. Federal Bureau of Prisons*, No. 07–cv–1011–DME–MEH, 2009 WL 150650, *7 (D. Colo. Jan. 21, 2009) (denying motion to dismiss prisoner Eighth Amendment claims alleging denial of HCV treatment); *see also Erickson v. Pardus*, 551 U.S. 89 (2007) (upholding the sufficiency of plaintiff's claim against prison officials for withdrawing HCV treatment). Both *Morris* and *Green* relied upon Tenth Circuit and Supreme Court precedent to find the law clearly established. *Morris*, 2015 WL 5474469, at *11; *Green*, 2009 WL 150650, at *7.

Additionally, the weight of authority across circuits clearly establishes that failure to provide necessary treatment for prisoner medical conditions, including HCV, for nonmedical reasons violates the Eighth Amendment. *See, e.g., Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011) (finding in prisoner HCV case that inflexible, categorical treatment protocols violate the Eighth Amendment); *Abu-Jamal v. Kerestes*, 779 F. App'x 893, 900 (3d Cir. 2019) ("At the time of the relevant events, it was clearly established that denying particular treatment to an inmate who indisputably warranted that treatment for nonmedical reasons would violate the Eighth Amendment.") (citing *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987)); *see also Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a

case of deliberate indifference has been made out") (citing *Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir.1984)).

Here, the Complaint alleges that numerous prison medical staff informed Plaintiff that treatment of his condition was necessary, but that he was denied such treatment due to the Clinical Standards. It further alleges that the Clinical Standards imposed nonmedical requirements for HCV treatment. [#188 at ¶¶ 39, 60-71, 92] Defendants were thus on notice that these facts, if true, would violate the Eighth Amendment and the Court RECOMMENDS that the Motion be DENIED as to qualified immunity.

### C.  Statute of Limitations

Finally, Defendants argue that certain claims against all Defendants are barred by the statute of limitations. [#204 at 15-16] "A statute of limitations defense may be appropriately resolved on a [Rule] 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation marks omitted). "In a § 1983 action, state law governs issues regarding the statute of limitations and tolling, although federal law governs the determination of when a § 1983 action accrues." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). Colorado law prescribes a two-year statute of limitation to section 1983 claims. *Id.*; COLO. REV. STAT. § 13-80-102.

Plaintiff alleges he was systematically denied HCV treatment from 2009 to 2018. [#188 at ¶ 59] Defendants first argue that, because of the two-year statute of limitations, this Court should dismiss all claims arising from conduct occurring more than two years prior to the date the Complaint was filed. [#204 at 15-16] Plaintiff filed the instant action on May 22, 2018. [#1] Thus, Defendants argue that any claims arising

from conduct that occurred after May 22, 2016 are actionable, but claims arising from conduct occurring before that date are barred by the two-year statute of limitations.

In response, Plaintiff argues that this Court should apply the continuing violation doctrine, under which "the cause of action accrues at, and limitations begin to run from, the date of the last injury" where the tort involves a continuing and repeated injury. *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430–31 (10th Cir. 1996) (citing 54 C.J.S. Limitation of Actions § 177 (1987)).  The Tenth Circuit has "not yet decided whether [the continuing violation doctrine] should apply to § 1983 claims."  *Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018); *see also Carroll v. Routh*, 812 F. App'x. 770, 773 (10th Cir. 2020).  But, every Circuit to address the issue has found the continuing violation doctrine applicable to such claims.  *See DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018) (collecting cases).  The Court need not reach the issue here, because each individual claim is based upon conduct within the limitations period and, as discussed below, the Court cannot conclude that any claims against any particular defendant would be barred by the statute of limitations, even if the continuing violation doctrine is deemed inapplicable.

Defendants additionally argue that all claims against Defendants Raemisch and Ariola-Tirella should be dismissed because the allegations against both Defendants are based on conduct that took place before the statute of limitations period began. [#204 at 16]  As to Defendant Ariola-Tirella, Defendants allege that the statute of limitations period begins on February 14, 2018.[8]  [*Id.*]  The Complaint alleges Defendant Ariola-Tirella signed the 2017 Clinical Standards, under which Plaintiff was denied treatment

---

[8] Defendants argue that because Plaintiff added Defendant Ariola-Tirella to the case on February 14, 2020 [#188], this later date is required.  [#204 at 16]

until July 2018. [#188 at ¶¶ 56, 59] Thus, at a minimum, the Complaint alleges conduct occurring during 2018 and within any limitations period applicable to this Defendant. Accordingly, the Court declines to dismiss Defendant Ariola-Tirella entirely at this time.

As to Defendant Raemisch, the Amended Complaint is not clear on the precise dates of his actions. It states only: (1) that he was the Director of CDOC at all times relevant to the Complaint, (2) that "[a]s early as April 2014 Plaintiff began writing letters to Defendant Raemisch," and (3) that "Plaintiff[] has consistently maintained in his letters and grievances to Defendant Raemisch [his position regarding his lack of HCV treatment]." [#188 at ¶¶ 9, 64] Thus, although the letters and associated actions by Defendant Raemisch began in 2014, it is clear only that such interactions continued for a period of time as yet unknown. Therefore, construing the Complaint in the light most favorable to Plaintiff, the Court finds that at least some of Defendant Raemisch's conduct may have occurred within the limitations period and, at a minimum, the Court "cannot determine from the face of the complaint whether plaintiff's claim is time-barred in its entirety." *Chrisco v. Raemisch*, 374 F. Supp. 3d 1093, 1098 (D. Colo. 2019). Accordingly, the Court declines to dismiss Defendant Raemisch entirely at this time, although Defendants are free to re-assert this defense at a later stage.

In sum, the Court RECOMMENDS the Motion be DENIED to the extent it seeks to dismiss claims or Defendants based upon a statute of limitations defense.

**IV.   CONCLUSION**

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#204] be **DENIED**.[9]

DATED:  October 23, 2020                                  BY THE COURT:

                                                                        s/Scott T. Varholak
                                                                        United States Magistrate Judge

---

[9] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).